# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Clifford David Brimmer**                                    **Civil No. 04-5005 (JNE/SRN)**

          **Petitioner,**

     **v.**                                                   **REPORT AND**
                                              **RECOMMENDATION**

**Joan Fabian, Commissioner,**
**Robert Feneis, Warden, and**
**State of Minnesota,**

          **Respondents.**

---

Clifford David Brimmer, *pro se*.

Kimberly Parker, Esq., State of Minnesota, Assistant Attorney General on behalf of Respondents.

---

    **THIS MATTER** is before the undersigned United States Magistrate Judge on Petitioner Clifford David Brimmer's Second Amended Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus.  (Doc. No. 15.)  The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1(c).  Petitioner Clifford David Brimmer, currently an inmate at the Minnesota Correctional Facility at Oak Park Heights[1], seeks relief under 28 U.S.C. § 2254 for alleged violations of his due process rights to a fair trial, prosecutorial misconduct, his right to effective assistance of counsel, and his constitutional rights

---

[1]When he initiated this action, Petitioner was an inmate at the Minnesota Correctional Facility at Rush City.

1

at sentencing.  For the reasons set forth below, the Court recommends that Petitioner's

application for habeas relief be denied and the case be dismissed with prejudice.

## I.     BACKGROUND

In February of 2002, Aaron Hein ("Hein") was arrested for possession of controlled

substances in Pipestone County.  State v. Brimmer, No. A03-588, 2004 Minn. App. LEXIS 770,

at *1 (Minn. Ct. App. Jul. 6, 2004), rev. denied A03-588, 2004 Minn. LEXIS 590 (Minn. Sep.

21, 3004).  Hein subsequently agreed to assist law enforcement officers in the investigation of

narcotics offenses.  Id.  To that end, Hein informed officers that Petitioner was involved in such

offenses.  Id.  An investigation was initiated and Hein, along with an undercover officer,

attempted to purchase methamphetamine from Petitioner.  Id. at **1-2.  Petitioner initially

declined to sell them methamphetamine, stating that he had none at the time, but instructed them

to return later.  Id. at *2.  Hein and the officer returned approximately one hour later and entered

Petitioner's home.  Id.  Living with Petitioner were Anthony Cole ("Cole") and Petitioner's

girlfriend, Lisa Gunnick ("Gunnick").  Id.  Petitioner informed Hein and the officer that Cole

would deliver methamphetamine to them later in the evening, and Cole did so.  Id.

The officer sought a warrant authorizing a night time search of Petitioner's home,

indicating that he believed that remaining quantities of methamphetamine might be destroyed if

the issuance of the warrant was delayed.  Id.  A search was conducted pursuant to the warrant

which uncovered $3,090 hidden in Petitioner's couch, including the money used to earlier

purchase the methamphetamine, what appeared to be a record of Petitioner's drug transactions,

controlled substances, a large quantity of baggies, and drug paraphernalia.  Id. at *3.

Methamphetamine and a scale were discovered in Cole's car which was parked on Petitioner's property.[2]  Id.

Shortly after execution of the warrant, Petitioner admitted to law enforcement that he had "transferred" methamphetamine, having paid $10,000 to "the big guy" for a pound of methamphetamine earlier in the evening.  Id.  Petitioner also stated that he and Gunnick were willing to drive to South Sioux City, Nebraska to purchase methamphetamine, as part of a controlled buy.  Id.; (Tr. Ex. 22. at 40-41.)  At some point Petitioner was allowed to speak with Gunnick in private, and thereafter recanted his statements, saying that Cole was the only drug dealer in the house and that he had made up his confession so that he could go home.  Id.

On March 15, 2002, Petitioner was charged with: 1) importing a controlled substance across a state border in violation of Minn. Stat. § 152.061, subd. 1 & 3 (2000); 2) two counts of a controlled substance crime in the first degree in violation of Minn. Stat. § 152.01, subds. 1(1), 2(1), and subd. 3(a) (2000); 3) conspiracy to commit a controlled substance crime in the first degree in violation of Minn. Stat. § 152.096, subd. 1 (2000); and 4) possession of a controlled substance not evidenced by a tax stamp in violation of Minn. Stat. § 297D.04 (2000) and Minn. Stat. § 297D.09, subd. 2 (2000).  Id. at **3-4; (Pet'r's Br. Minn. Ct. Appeals at 1.)  On January 31, 2003, a jury returned verdicts of guilty on all counts.  (Pet'r's Br. Minn. Ct. Appeals at 2.) On February 25, 2003, Petitioner was sentenced to 110 months for importing a controlled substance across a state border; to 86 months for conspiracy to commit a controlled substance

---

[2]In his Petition for Review to the Minnesota Supreme Court, Petitioner asserted that the Minnesota Court of Appeals was incorrect in characterizing Cole's car as being on Petitioner's property. (Pet'r's Pet. Rev. Minn. Sup. Ct. at 4 n.1.)  Instead, Petitioner asserts that Cole's car was parked on the street across from Petitioner's house.  (Id. at 4, Pet'r's Br. Minn. Ct. Appeals at 5.)

crime in the first degree; and to 139 months for a controlled substance crime in the first degree. (Pet'r's Br. Minn. Ct. Appeals at 2.)  All terms of imprisonment were to be served concurrently. (Id.)

On May 23, 2003, Petitioner appealed his convictions to the Minnesota Court of Appeals, arguing that: 1) the trial court erred by allowing hearsay evidence, in the form of testimony by the undercover officer and the county sheriff, that the investigation was initiated because Hein had identified Petitioner as a drug dealer; 2) the trial court erred by admitting a previous conviction; 3) the trial court erred by allowing the undercover officer to sit at counsel's table with the prosecutor; 4) the prosecutor committed prosecutorial misconduct by vouching for a witness, presenting an inflammatory closing argument, and by misleading the jury; 5) he received ineffective assistance of counsel because his attorney did not challenge the nighttime execution of the search warrant; 6) he was entitled to a jury instruction requiring that the jury come to a unanimous agreement on which acts of importation and conspiracy he committed; and 7) he was improperly sentenced for both the conspiracy and importation convictions because they constituted the same behavioral incident.  Brimmer, 2004 Minn. App. LEXIS 770 at **8-29.

The Court of Appeals agreed with Petitioner's first argument that the testimony of the undercover officer and the sheriff was hearsay, but found the error harmless, reasoning that Hein had been identified in other testimony, that the identification of Petitioner was brief and in passing, and that the evidence against Petitioner was overwhelming.  Id. at *10.  The Court of Appeals rejected Petitioner's other arguments and affirmed Petitioner's convictions and sentence.  Id. at **8-29.  Petitioner sought review from the Minnesota Supreme Court and, on September 21, 2004, the Minnesota Supreme Court denied his petition.  (Doc. No. 12, Ex. 1.)

4

Petitioner filed a Petition for Writ of Habeas Corpus on December 14, 2004.  (Doc. No. 1.)  On December 23, 2004, this Court found the Petition deficient and ordered it stricken without prejudice.  (Doc. No. 3.)  Petitioner was afforded the opportunity to file an amended petition within 30 days.  (Id.)

On January 11, 2005, Petitioner filed an Amended Petition for Writ of Habeas Corpus. (Doc. No. 4.)  Among other claims, Petitioner alleged that his trial counsel "failed to address his mental and health issues before calling [Petitioner] to take the stand during trial.  Furthermore, he failed to address the issues of entrapment and the means to use entrapment."  (Id. at ¶ 13.) Petitioner listed these allegations under the section allowing for the identification of claims which were not presented in any other court but did not direct the Court to any further support or argument regarding these allegations.  (Id.)  On April 3, 2006, this Court issued a Report and Recommendation finding that Petitioner's above-stated ineffective assistance of counsel claim was not yet exhausted.  (Doc. No. 14.)  Therefore, as Petitioner had filed a "mixed-petition", i.e. one containing both exhausted and unexhausted claims, this Court recommended that the petition be denied without prejudice unless by April 20, 2006, Petitioner submitted an amended petition in which he had eliminated his unexhausted claims.  (Id. at 11-12.)

On April 18, 2006, Petitioner filed his Second Amended Petition for Writ of Habeas Corpus, the petition currently before the Court.  (Doc. No. 15.)  In that Petition, he alleges the following grounds for relief[3]:

1.      The trial court erred by (a) allowing police officers to testify to hearsay information connecting Petitioner to drug distribution; (b) allowing the State to

---

[3]Petitioner stated some of his claims in the form of a question.  (Pet'r's Second Am. Pet. at 2-6.)  In the interest of clarity, the Court has reformulated Petitioner's claims as assertions.

impeach Petitioner with a prior conviction; and (c) by permitting the lead police investigator to sit alongside the prosecutor during the trial;

2. The prosecutor committed serious error during closing argument by expressing his personal opinion about the credibility of witnesses and by misleading and appealing to the passions of the jury;

3. Defense counsel provided ineffective assistance of counsel by failing to challenge the search warrant's night time execution provision;

4. Petitioner was denied the right to a unanimous verdict on the conspiracy charge because the jury was instructed on three alleged overt acts but was not instructed that they had to unanimously agree on the particular overt act; and

5. The trial court erred when it imposed sentences for both importation and conspiracy to commit a controlled substance crime because the time, location and conduct established a single criminal objective and single criminal incident.

(Pet'r's Second Am. Pet. at 2-6.)  In support of each claim, Petitioner directs the Court to his brief submitted to the Minnesota Supreme Court.  Id.

Respondents assert that the Petition should be dismissed in its entirety, arguing that: 1) Petitioner's claims are procedurally barred because Petitioner failed to fairly present a federal issue to the Minnesota Supreme Court; 2) even if not procedurally barred, Petitioner's claims fail on the merits.  (State's Mem. Opp. Pet. at 1.)

## II.  DISCUSSION

### A.  Standard of Review

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991). As a result, before a writ may issue, the Petitioner must establish that the State's exercise of custody

6

over his person is an affront to the Constitution, a federal law, or a federal treaty.  Id.; See also, Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994); Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992); Garcia v. Powers, 973 F.2d 684, 685 (8th Cir. 1992).

In 1996, Congress restricted the scope of a federal court's review of habeas petitions, where the underlying claims were adjudicated in state court.  See Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  A federal court's authority to vitiate state court decisions, by the granting of a writ of habeas corpus, is now limited to the narrow class of claims which have been fully exhausted in the state courts, and which involve an adjudication that either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court explained that the "contrary to," and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1), present two separate grounds on which a federal court may grant habeas relief to claims adjudicated in the state courts.  Williams v. Taylor, 529 U.S. 362, 413 (2000).  The Court went on to instruct as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principal to the facts of the prisoner's case.

Id.  The Court further explained that a consideration of a state court's decision, under the

"unreasonable application" clause, requires a federal court to "ask whether the state court's

application of clearly established federal law was objectively unreasonable."  Id.

Under this heightened standard of review, federal courts "may not issue the writ simply

because that court concludes in its independent judgment that the relevant state court decision

applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application

must also be unreasonable."  Id.; see also, Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)

(examining the impact of Williams on habeas proceedings); Newman v. Hopkins, 247 F.3d 848,

850-51 (8th Cir. 2001); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000).

As a consequence, the "contrary to" clause is to be used in cases addressing pure

questions of law, whereas the "unreasonable application" clause addresses mixed questions of

fact and law.  See, Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000) (the "in custody"

determination for Miranda purposes is a mixed question of law and fact that is properly reviewed

under the "unreasonable application clause of §2254(d)(1)"); see also Drinkard v. Johnson, 97

F.3d 751, 767 (5th Cir. 1996) (overruled in part on other grounds by Gochicoa v. Johnson, 118

F.3d 440 (5th Cir. 1997)).  Therefore, when a petitioner argues that the state court improperly

applied clearly established Supreme Court law to a particular set of facts, the federal courts may

not grant a writ absent a finding that such an application was unreasonable.

Additionally, 28 U.S.C. § 2254(e)(1) retains a presumption of correctness for all purely

factual determinations, which are rendered by a state tribunal, and which can, as a result, only be

rebutted by the production of clear and convincing evidence to the contrary.  Despite this

presumption, 28 U.S.C. § 2254(d)(2) authorizes the issuance of a writ if the state court judgment

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding."  Kinder v. Bowersox, 272 F.3d 532, 538

(8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996) ("We presume state

court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the

respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus,

"[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be

rebutted only 'by clear and convincing evidence.'"  Kinder v. Bowersox, 272 F.3d at 538 (citing

28 U.S.C. § 2254(e)(1)).

### B.    Petitioner's Claims

In order to reach the merits of a habeas petition, federal courts "must first determine

whether the petitioner has fairly presented his federal constitutional claims to the state court."

McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997); See also  O'Sullivan v. Boerckel, 526 U.S.

838, 845 (1999).  Relief must be sought not in any state court, but the highest available state

court.  O'Sullivan, 526 U.S. at 845; See also Duncan v. Henry, 513 U.S. 364, 365-66 (1995).  In

addition,

> "[i]n order to fairly present a federal claim to the state courts, the petitioner must
> have referred to a specific federal constitutional right, a particular constitutional
> provision, a federal constitutional case, or a state case raising a pertinent federal
> constitutional issue in a claim before the state courts."

McCall, 114 F.3d at 757. (internal citations omitted).  Moreover, the petitioner's petition, or

brief, to the highest available state court must satisfy the fair presentation requirement and the

petitioner cannot rely on materials submitted to intermediate state courts to meet this burden.

Baldwin v. Reese, 541 U.S. 27, 32 (2004); See also Voss v. Minnesota, Civil No. 05-697, 2006

U.S. Dist. LEXIS 44932, *4 (D. Minn. June 29, 2006) ("Moreover, a prisoner has not made a fair

presentation to a state court if the court is required to read outside the petition [to the highest

9

available state court] to discover the existence of such a federal claim."); See also Carney v. Fabian, 441 F.Supp. 2d 1014, *16 (D. Minn. 2006).

When a court determines that a petition contains claims that have not been fairly presented, the court next must determine which claims are unexhausted and require dismissal of the petition and which claims are procedurally defaulted and, therefore, unavailable for consideration on the merits.  "'Unexhausted' means both that the claim has not been fairly presented in 'one complete round of the State's established appellate review process,' but also that the petitioner 'has the right under the law of the State to raise, by any available procedure, the question presented,' 28 U.S.C. § 2254(c)."  Velazquez v. Houston, No. 4:04cv3388, 2006 U.S. Dist. LEXIS 6899, at *7 n.1 (D. Neb. Feb. 2, 2006) citing O'Sullivan, 526 U.S. at 844-45. If the petition contains at least one claim that is unexhausted, the entire petition will be dismissed for non-exhaustion.  Rose v. Lundy, 455 U.S. 509, 522 (1982).  If the petition contains no such claims, courts will determine which claims are available for consideration on the merits.

In contrast, "[a] state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by United States Supreme Court."  Clemons v. Leubbers, 381 F.3d 744, 750 (8th Cir. 2004).  In making this determination, Courts therefore "address whether [] state law would prevent [a petitioner] from raising these claims in a state court."  McCall, 114 F.3d at 757.  It is well established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence.  Clemons v. Leubbers, 381 F.3d at 750 (internal citations omitted);  See also Carney, 441 F.Supp. 2d at * 12 citing Coleman v. Thompson, 501 U.S. 722, 750 (1991).

As the Minnesota Supreme Court's denial of his Petition for Review ended Petitioner's direct appeals, post-conviction motions present his primary avenue to state court relief. Minnesota courts apply the well-established "Knaffla rule" to determine their capacity to review claims in post-conviction motions.  McCall, 114 F.3d at 757; Carney, 441 F.Supp.2d at *6.  The Knaffla rule states "where a direct appeal has been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."  State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).  The Knaffla rule has two recognized exceptions: "where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or where the defendant did not deliberately and inexcusably fail to raise the issue in the first appeal, and fairness requires review."  Dean v. Corbo, Civ. No. 04-2639, 2005 U.S. Dist. LEXIS 39915, at *10 (D. Minn. August 29, 2005) (internal citations omitted).  Courts deny those petitions which contain claims that cannot be addressed on the merits.  Carney, 441 F.Supp. 2d at *31.

This Court recommends that Petitioner's application for habeas relief be denied on the grounds that his Second Amended Petition for Writ of Habeas Corpus asserts six procedurally defaulted claims and one claim which fails on the merits.  The Court considers each of Petitioner's claims in turn.

### 1.    The Admission of Petitioner's Prior Conviction

In his habeas petition, Petitioner raises this issue as follows: "Did the District Court err ... by allowing the State to impeach Petitioner with his prior misdemeanor conviction...?"  (Pet'r's Second Am. Pet. at 2-3.)  For purposes of this habeas petition, this Court will construe this question as Petitioner's claim that the trial court denied him due process under the Fourteenth Amendment by admitting into evidence his prior misdemeanor theft conviction.

11

The Court, therefore, first turns its attention to whether Petitioner fairly presented this federal claim to the Minnesota Supreme Court.  A fairly presented claim must "refer[] to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."  <u>McCall</u>, 114 F.3d at 757.

Petitioner's petition for review to the Minnesota Supreme Court argued:

> The district court did not articulate any reasoning for its conclusion that the use of a misdemeanor theft conviction to impeach Brimmer involved dishonesty.  The appellate court justified this ruling even though the conviction involved stealing furniture from a landlord and clearly did not involve dishonesty or false statement under this Court's decisions.  <u>State v. Sims</u>, 526 NW2d 202 (Minn. 1994).

(Pet'r's Pet. Minn. Sup. Ct. at 8-9.)  On its face, Petitioner's argument seems to focus on an error in the trial court's application of Minnesota evidence law rather than raise a federal constitutional right.  Moreover, the court's decision in <u>Sims</u>, 526 N.W.2d 202 (Minn. 1994), does not rest on federal constitutional grounds.  Accordingly, Petitioner has failed to meet the requirements for a fair presentation of this claim to the Minnesota Supreme Court.  <u>McCall</u>, 114 F.3d at 757.

The Court must therefore next inquire into whether this claim is unexhausted or procedurally defaulted.  In doing so, the Court finds Petitioner's claim procedurally defaulted because state law "would prevent [Petitioner] from raising [this] claim[] in a state court."  <u>Id.</u>  As noted above, Minnesota courts apply the <u>Knaffla</u> rule[4] to determine their ability to review claims in post conviction motions.  <u>Id</u>; <u>Carney</u>, 441 F.Supp.2d at *6.  Here, the <u>Knaffla</u> rule would clearly bar a Minnesota state court from considering this claim, were it raised in a post-

---

[4] All of Petitioner's federal claims involve well-settled law and Petitioner has provided no explanation for his failure to bring these federal law claims in his petition to the Minnesota Supreme Court.  Therefore, none of his claims qualify under either exception to the <u>Knaffla</u> rule.

conviction motion, because the relevant section of Petitioner's Brief to the Minnesota Court of

Appeals mentions the Fourteenth Amendment to the United States Constitution and thereby

demonstrates that this claim was known at the time of his petition to the Minnesota Supreme

Court.  State v. Knaffla, 243 N.W.2d at 741; (Pet'r's Br. Minn. Ct. Appeals at 19-20.)

The Court must consider otherwise procedurally defaulted claims on the merits if a

petitioner can show either cause and prejudice to excuse the default or actual innocence.

Clemons v. Leubbers, 381 F.3d at 750.  (internal citations omitted)  Petitioner, however, has

failed to make either showing.  First, Petitioner has not alleged a cause for his procedural default

and therefore cannot qualify under the cause and prejudice prong.  In addition, Petitioner has not

professed his actual innocence, and therefore cannot qualify under the actual innocence prong.

Petitioner has failed to make this showing not only for this claim, but for all of the procedurally

defaulted claims discussed below.

### 2.	Investigator's Presence at Counsel's Table

In his habeas petition, Petitioner raises this issue as follows: "Did the District Court err ...

by permiting (sic) the lead Police investigator to sit along with the prosecutor during the full

course of the trial."  (Pet'r's Second Am. Pet. at 2-3.)  The Court construes this question as

Petitioner's claim that he was denied due process under the Fourteenth Amendment when the

trial court permitted the lead police investigator to remain seated at counsel's table alongside the

prosecutor for the duration of the trial.

First, the Court examines whether Petitioner fairly presented his claim to the Minnesota

Supreme Court.  In his petition for review to the Minnesota Supreme Court, he argued,

> While it has been nearly 10 years since this Court "specifically cautioned" against
> law enforcement officers sitting at counsel table during trial, State v. Koskela,

> 536 NW2d 625 (Minn. 1995), the district court did not state why it permitted it in
> this case yet the appellate decision could not find an abuse of discretion.

(Pet'r's Pet. Minn. Sup. Ct. at 9.)  On its face, Petitioner's argument apparently relies only on

state law.  Moreover, a review of <u>Koskela</u>, 536 N.W.2d 625, indicates that the decision does not

rest on federal constitutional grounds.  Therefore, this claim also fails to meet the fair

presentation requirements established in <u>McCall</u>.  114 F.3d at 757.

Second, turning to the question of exhaustion or procedural default, the Court finds that

Petitioner has procedurally defaulted this claim because state law "would prevent [Petitioner]

from raising [this] claim[] in a state court."  <u>Id</u>.  Since the Petitioner argued in his brief to the

Minnesota Court of Appeals that the investigator's presence at counsel's table deprived him of

his federal due process rights, the <u>Knaffla</u> rule would clearly bar a Minnesota court from

considering this federal claim were it raised in a post conviction motion.  <u>State v. Knaffla</u>, 243

N.W.2d at 741; (Pet'r's Br. Minn. Ct. App. at 20.)

### 3.      Prosecutorial Misconduct

In his habeas petition, Petitioner raises this issue as follows: "the Prosecutor committed

serious error during closeing (sic) argument by expressing his personal opinion about the

credibility of witnesses that did not appear for trial, by misleading and appealing to the passions

of the trial jury."  (Pet'r's Second Am. Pet. at 2-3.)  The Court construes this statement as

Petitioner's claim that his Fourteenth Amendment due process rights were impaired when the

prosecutor's closing argument at trial allegedly contained the prosecutor's personal opinion

regarding witness credibility, and misled, and appealed to the passions of, the jury.

First, the Court inquires into whether he fairly presented this claim to the Minnesota

Supreme Court.  His petition for review argued,

> Prosecutorial misconduct continues to be a serious problem in Minnesota. This case provides many examples of improper argument, arguments that even the Court of Appeals mistook for proper argument. This Court's guidance is needed to help the Court of Appeals determine when arguments improperly vouch for the credibility of a witness, when references to Al Capone and Columbian drug dealers are inflammatory and when arguments are prejudicially misleading. In this case the decision diminished the improper argument and diminished this Court's precedents and strong, repeated warnings.

(Pet'r's Pet. Minn. Supp. Ct. at 9.)  The above argument fails to fairly present a federal claim under Baldwin v. Reese, 541 U.S. 27, 33 (2004).  The petitioner in Baldwin v. Reese used the words "ineffective assistance of counsel" in his petition to the Oregon Supreme Court, but the United States Supreme Court held that those words, without more, did not alert the Oregon Supreme Court to the federal nature of his claims.  541 U.S. at 32-33.  Here, Petitioner's claim of "prosecutorial misconduct" similarly failed to signal the federal nature of his claim.

Accordingly, the Court must next decide if petitioner's claim is unexhausted or procedurally defaulted.  The Court concludes that it is procedurally defaulted because state law "would prevent [Petitioner] from raising [this] claim[] in a state court."  McCall, 114 F.3d at 757.  The fact that Petitioner argued in his Brief to the Minnesota Court of Appeals that the alleged prosecutorial misconduct affected Petitioner's right to due process under the United States Constitution is evidence that his federal claim was known at the time he petitioned the Minnesota Supreme Court for relief.  (Pet'r. Br. Minn. Ct. Appeals at 31.)  Therefore, the Knaffla rule would bar a Minnesota court from considering this claim in a post conviction motion.  State v. Knaffla, 243 N.W.2d at 741.

### 4.       Deprivation of a Unanimous Verdict

In his habeas petition, Petitioner raises this issue as follows:

> Was Petitioner denied that right to a unanimous verdict on the conspiracy charge when (sic) complaint alleged and the court instructed the jury on three overt acts

> petitioner allegedly committed, procuring, transporting a sale of ten grams or
> more of methamphetamine-with-out instructing the jury that they had to
> unanimously agree on the particular overt act?

(Pet'r's Second Am. Pet. at 3-4.)  The Court construes this question as Petitioner's claim that he was deprived of due process under the Fourteenth Amendment when he was denied the right to a unanimous verdict on the conspiracy charge against him.

The Court first examines whether Petitioner fairly presented this claim to the Minnesota Supreme Court.  In his petition for review to the Supreme Court, he argued,

> In addition, the appellate court glossed over the other important issues in the case,
> ...(sic) the denial of a right to a unanimous verdict on the conspiracy charge,
> where the court instructed the jury on three distinct overt acts allegedly
> committed without instructing the jury that they had to unanimously agree on the
> particular overt act.

(Pet'r's Pet. Minn. Supp. Ct. at 10.)  Petitioner failed to argue this claim in any detail, much less describe any possible federal grounds for relief.  Therefore, this claim clearly fails the requirement for the fair presentation of a federal claim.  McCall, 114 F.3d at 757.

The Court must then decide whether Petitioner's claim is unexhausted or procedurally defaulted.  The Court concludes that it is procedurally defaulted because state law "would prevent [Petitioner] from raising [this] claim[] in a state court."  Id.  The Knaffla rule would bar a Minnesota court's consideration of this claim in a post-conviction motion because Petitioner's Brief to the Minnesota Court of Appeals cites the Due Process Clause of the Fourteenth Amendment, the Sixth Amendment, and federal case law and therefore this claim was known at the time of his petition to the Minnesota Supreme Court.  State v. Knaffla, 243 N.W.2d at 741; (Pet'r's Br. Minn. Ct. Appeals at 47-52.)

## 5.    Sentencing

In his habeas petition, Petitioner raises this issue as follows:

16

Did the trial court error (sic) when it imposed a sentence for both importation and conspiracy to commit a controlled substance crime in the first degree when the time, location and conduct established a single criminal objective and single behavioral incident?

(Pet'r's Second Am. Pet. at 3-4.) The Court construes this question as Petitioner's claim that the trial court violated federal sentencing law and/or the Fifth Amendment to the United States Constitution in imposing a sentence for both importation and conspiracy to commit a controlled substance crime.

First, the Court must determine whether Petitioner fairly presented his claim to the Minnesota Supreme Court. His petition for review to the Minnesota Supreme Court simply included this sentencing claim in the aforementioned list of "glossed over issues," and failed to identify any federal constitutional right which was violated. (Pet'r's Pet. Minn. Supp. Ct. at 10.) Therefore, this claim clearly fails the requirement for the fair presentation of a federal claim. McCall, 114 F.3d at 757.

The Court must next determine if Petitioner's claim is unexhausted or procedurally defaulted. The Court concludes that it is procedurally defaulted because state law "would prevent [Petitioner] from raising [this] claim[] in a state court." Id. Petitioner's Brief to the Minnesota Court of Appeals specifically argued that the trial court sentenced Petitioner in violation of Minn. Stat. § 609.035, subd. 1. (Pet'r's Br. Minn. Ct. Appeals at 53-58.) The court in State v. Johnson, cited in Petitioner's Brief to the Court of Appeals, notes that Minn. Stat. § 609.035, subd. 1 expands on the double jeopardy protections contained in Minn. Const. art. 1, § 7. 141 N.W.2d 517, 521, n.4 (Minn. 1966). (Id. at 54.) Therefore, to the extent that a misapplication of Minn. Stat. § 609.035, subd. 1 might implicate the double jeopardy provision of the Fifth Amendment to the United States Constitution, Petitioner's federal claim was known

at the time he petitioned the Minnesota Supreme Court. Accordingly, the <u>Knaffla</u> rule would clearly bar a Minnesota court from considering his federal claim were it raised in a post conviction motion and it is, therefore, procedurally defaulted. <u>State v. Knaffla</u>, 243 N.W.2d at 741.

### 6.       Ineffective Assistance of Counsel

In his habeas petition, Petitioner states that his trial counsel's failure to object to the search warrant's nighttime execution provision constituted ineffective assistance of counsel. (Pet'r's Second Am. Pet. at 3.) The Court construes this as a claim for ineffective assistance of counsel under the Sixth Amendment to the United States Constitution.

First, the Court inquires into whether Petitioner fairly presented his claim to the Minnesota Supreme Court. In his petition for review to the Minnesota Supreme Court, Petitioner asserted "[i]n addition, the appellate court glossed over the other important issues in the case, [sic] defense counsel's failure to challenge the nighttime execution provision." (Pet'r's Pet. Minn. Supp. Ct. at 10.) Therefore, Petitioner's petition to the Minnesota Supreme Court stated only the factual basis for any ineffective assistance of counsel claim and did not make any supporting federal constitutional legal claim or argument. <u>Id.</u> As "the United States Supreme Court has expressly held that '[i]t is not enough that all the facts necessary to support the federal

claim were before the state courts...," Petitioner's claim was not fairly presented[5]. Carney, 441 F.Supp. at *14-15 citing Anderson v. Harless, 459 U.S. 4, 6 (1982).

Accordingly, the Court must next determine if his claim is unexhausted or procedurally defaulted. The Court concludes that it is procedurally defaulted because state law "would prevent [Petitioner] from raising [this] claim[] in a state court." Id. The Knaffla rule would bar a Minnesota Court from considering this claim in a post-conviction motion because Petitioner's Brief to the Minnesota Court of Appeals identified the Sixth Amendment as the basis of his claim and cited federal case law in support of his arguments and, therefore, his claim was known

---

[5]In Baldwin v. Reese, the Supreme Court suggested, without deciding, that a federal claim might be preserved, even if not expressly raised as such, if it is clear that the state claim and federal claim are identical. 541 U.S. at 34. Minnesota courts do apply the same standards as federal courts to determine the validity of a claim of ineffective assistance of counsel. Minnesota v. Shoen, 578 N.W.2d 708, 717 (Minn. 1998). Even if the Court were to accept that argument here, however, Petitioner's claim would still fail on the merits because the Minnesota Court of Appeals' determination that Petitioner's Sixth Amendment right to effective counsel was not violated did not involve "an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1) Therefore, this claim cannot serve as a basis for habeas relief under 28 U.S.C. § 2254(d)(1). The Minnesota Court of Appeals correctly identified the two-part standard for determining the effectiveness of counsel's assistance established in Strickland v. Washington, 466 U.S. 668, 685-86 (1984): "in order to prevail on a claim for ineffective assistance of counsel, appellant must show by a preponderance of the evidence: (1) that his trial attorney's conduct was objectively unreasonable and (2) that this unreasonable conduct probably changed the result of the trial." Brimmer, 2004 Minn. App. LEXIS 770 at **22-23 (internal citation omitted). Therefore, this Court only need determine if the Court of Appeal's application of Strickland was "an unreasonable application of clearly established Federal law." Williams v. Taylor, 529 U.S. 362, 417 (2000).
The Minnesota Court of Appeals noted that under State v. Lien, 265 N.W.2d 833, 841 (Minn. 1978), the remedy for a violation of the night-time warrant execution statute was not always suppression of the evidence seized. Id. at **23-24. Therefore, the Minnesota Court of Appeals reasoned, Petitioner could not satisfy the second prong of Strickland because he could not prove that his attorney's failure to object "probably changed the result of the trial" by leading to the admission of evidence that would have otherwise been suppressed. Id. As the Minnesota Court of Appeals correctly applied Minnesota state law in reaching this conclusion, this Court finds that its application of Strickland was not "an unreasonable application of clearly established Federal law." Williams v. Taylor, 529 U.S. at 417. Therefore, this claim will not provide a basis for relief under 28 U.S.C. § 2254(d)(1).

when he filed his petition for review to the Minnesota Supreme Court.  State v. Knaffla, 243

N.W.2d at 741; (Pet'r's Br. Minn. Ct. Appeals at 39-46.)

### 7.    The Informant's Tip

Finally, in his habeas petition, Petitioner raises this issue as follows: "Did the District

Court err ... by allowing police officers to testify to hearsay information from informants

claiming to connecting (sic) the Petitioner to Drugs (sic) distribution ... ?"  The Court construes

this question as Petitioner's claim that the trial court's admission of hearsay testimony which

deprived him of his Sixth Amendment right to confront witnesses against him was not harmless

error.  After addressing this claim on the merits, the Court finds that it will not provide a basis

for habeas relief.

Petitioner's Confrontation Clause claim arises from the introduction at trial of police

testimony which, in an effort to explain the initial decision to investigate Petitioner, included

informant Aaron Hein's hearsay description of Petitioner as a drug dealer.  Brimmer, 2004 Minn.

App. LEXIS 770 at *9.  To the extent that Petitioner has stated a federal claim, Petitioner has

properly presented his claim to the Minnesota Supreme Court by citing State v. Litzau, 650

N.W.2d 177, 183 (Minn. 2002), in his petition for review.  The court in Litzau relied, in part, on

federal constitutional concerns regarding hearsay in its holding.  McCall, 114 F.3d at 757.

In its consideration of the contested testimony, the Minnesota Court of Appeals applied

State v. Ford, 322 N.W.2d 611, 615 (Minn. 1982), which held that, because of the risk of

prejudice, Minnesota Rule of Evidence 403 banned the contents of an informant's tip even for

the limited nonhearsay purpose of explaining the purpose of a police investigation.  State v.

Brimmer, 2004 Minn. App. LEXIS 770 at *10.  (The reasoning in Ford, 322 N.W.2d at 615, is

analogous to the reasoning in Litzau, 650 N.W.2d 177 at 183).  Although it determined that the

20

trial court wrongfully admitted the police testimony, the Minnesota Court of Appeals found it

was a  harmless error:

> The tipster was identified in other testimony heard by the jury.  Further, identification of appellant by the officer and sheriff was brief and in passing. Finally, as with Ford, the evidence against appellant was overwhelming.

Id. at *10.

The limited issue before this Court then is whether the introduction of this hearsay

testimony constitutes harmless error.  Middleton v. Roper, 455 F.3d 838, 857 (8th Cir. 2006);

Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir 1999).  The Eighth Circuit has stated that:

> In a habeas corpus case, we apply the more deferential harmless error review standard of Brecht v. Abrahamson, 507 U.S. 619 (1993) (substantial or injurious effect or influence on the jury's verdict) to constitutional errors that have been subject to harmless error analysis by state courts. See Joubert v. Hopkins, 75 F.3d 1232, 1245 (8th Cir. 1996). However, we use the strict standard set out in Chapman v. California, 386 U.S. 18 (1967) (harmless beyond a reasonable doubt) in cases where the state court has not applied the Chapman analysis in the first instance.

Barrett, 169 F.3d at 1164.  When applying Chapman in the Confrontation Clause context, courts

> must consider a host of factors including: (1) the importance of the witness's testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradicting testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. See Orndorff v. Lockhart, 998 F.2d 1426, 1431 (8th Cir. 1993).

Barrett, 169 F.3d at 1164.  The Court's review of the record supports the conclusion that these

factors clearly support a finding of harmless error in this case.

First, the Court finds that the testimony was not of great importance to the prosecution's

case.  The testimony merely provided a background explanation for the initial police

investigation of Petitioner.  The prosecution's case centered around the controlled buy in which

Petitioner sold methamphetamine to Hein and an undercover police officer, and Petitioner's

broader narcotics trafficking operation involving his contacts in South Sioux City, Nebraska, which was established through other testimony.

Second, the record is replete with evidence corroborating the tip's description of Petitioner as a narcotics trafficker.  First, the prosecution presented evidence that Petitioner sold methamphetamine to Hein and an undercover agent in a controlled buy operation.  This evidence included the undercover officer's testimony, the audiotape recording of the wireless transmitter worn by Hein while he participated in the controlled buy, the methamphetamine that Hein and the undercover officer purchased and the testimony of Anthony Cole, who helped Petitioner execute the sale.  With respect to Petitioner's broader methamphetamine trafficking, the prosecution entered into evidence the videotape of Petitioner's confession regarding his purchases of large quantities of methamphetamine from an individual in South Sioux City, Nebraska, and Lisa Gunnick and Anthony Cole's testimony to the same effect, as well as the roughly five and one half ounces of methamphetamine found in Mr. Cole's car.  Although when questioned about his confession, Petitioner testified that he "made it up" to "get [the police] outta my house," the jury was nonetheless entitled to disregard this testimony.

Third, the Court acknowledges that, contrary to the initial representation of the prosecutor that Hein would testify, he did not do so and, therefore, he could not be cross-examined regarding the contested tip.  Nonetheless, Petitioner had the opportunity to cross-examine the undercover officer involved in the controlled buy and the Pipestone County sheriff. In neither case did Petitioner seize on the opportunity to question either witness regarding the reliability of Hein's tip.

Finally, the strength of the prosecution's overall case was formidable.  As noted above, to establish Defendant's involvement in the controlled buy operation, the prosecution introduced

22

testimony of the undercover officer and Anthony Cole, as well as the audiotape recording of the wireless transmitter worn by Hein and the methamphetamine purchased at the conclusion of the operation.  Likewise, the prosecution introduced the roughly five and a half ounces of methamphetamine recovered from Mr. Cole's car and Defendant's confession that he instructed Mr. Cole to hide the methamphetamine in the car because he believed that the police could not search the vehicle.  Finally, the prosecution introduced the evidence regarding Petitioner's broader trafficking operation involving an individual identified as "Jonathon" in South Sioux City, Nebraska.

In light of the evidence presented, a reasonable juror could find Petitioner guilty of the crimes charged without considering the contents of Hein's tip.  Therefore, the introduction of the contested tip amounted to harmless error and Petitioner's claim fails on the merits.

## III.  RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1.    Petitioner's Second Amended Application for Habeas Relief under 28

U.S.C. § 2254 (Doc. No. 15), be **DENIED**; and

2.    This action be **DISMISSED WITH PREJUDICE**.

Dated: November 29, 2006

     s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) a party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 15, 2006**, a writing which specifically identifies those portions of this Report which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order of judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.